SCHRAM v. PLYM.

No. 3618.

District Court, W. D. Michigan, S. D.

June 15, 1934.

Frank E. Wood, of Cincinnati, Ohio, for plaintiff.

Burns & Hadsell, of Niles, Mich., for defendant.

RAYMOND, District Judge.

The plaintiff seeks to recover $1,000 on an assessment made by the comptroller of the currency upon defendant as a stockholder in the bank of which plaintiff is receiver. A certificate for 10 shares of the capital stock of the Guardian National Bank of Commerce of Detroit (hereinafter called the Guardian Bank) was issued to defendant on December 31, 1931, to qualify him as a director. He continued as director until January 11, 1933. During this period and until the appointment of the receiver, the stock ledger book of the bank recorded defendant as the owner of these shares. On January 16, 1932, he subscribed to the statutory oath required of directors reciting therein that he was the owner in good faith and in his own right of 10 shares of the capital stock of the bank and that the same was not hypothecated or in any way pledged as security for any loan or debt.

Defendant now asserts as ground for non-liability that he is not now and never has been the owner in his own right of any stock in the bank; that if any stock stood in his name it had been transferred and the certificate delivered on March 22, 1932, more than one year before the bank closed; that he ceased to be a director on January 11, 1933, and could not thereafter hold the qualifying shares; and that he had done every act possible to effect a lawful transfer of the stock of the Guardian Bank from his name more than sixty days prior to the date of the failure of the bank to meet its obligations.

The controlling facts have been stipulated by the parties. Detailed recital thereof is unnecessary here. All the stock of the Guardian Bank, consisting of 100,000 shares of the par value of $100 each, was registered upon the stock books of the bank in the name of the Guardian Detroit Union Group, Inc. (hereinafter called Guardian Group), as owner, with the exception of the qualifying shares issued to officers and directors of the Guardian Bank. Upon Plym's election as director of that bank, he was required to surrender 50 shares of his stock in the Guardian Group and there were then issued to him 10 shares of the stock of the Guardian Bank. He was required to execute an assignment to the Guardian Group of the 10 shares and of any dividends that might accrue thereon, and to deposit them with the Union Guardian Trust Company (hereinafter called the Trust Company) as trustee, for the purpose of making an agreed re-exchange upon the termination of his directorship. The Guardian Group deposited the 50 shares of stock with the Trust Company as depositary to be held for exchange for the 10 shares of stock of the Guardian Bank upon the termination of the directorship. Under the terms of the depositary agreement, all dividends upon the Guardian Group stock were to be paid direct to defendant, and all the defendant's rights to receive dividends upon the 10 shares of stock were assigned to the Guardian Group. The obvious purpose of this and many other similar arrangements was to place the control of a considerable group of banks entirely in the hands of the Guardian Group, and also to obstruct or avoid enforcement of the individual statutory liability of stockholders in event of failure. It cannot be plausibly contended that defendant was unaware of the plan or of its purposes.

The suit is based upon section 63 of title 12 USCA. It seems to the court that whatever validity the contentions of the defendant might have upon issues framed as between himself and the bank, they are utterly without force as against creditors and depositors of the bank. It is well recognized that the law presumes that creditors and depositors became such because of their reliance upon the statutory liability of the stockholder for a double assessment. See Scott v. Latimer (C. C. A.) 89 F. 843, 852. In that case it was said:

"It is settled that if one knowingly permits his name to appear on the books of a national bank as a shareholder, and accepts the benefits of the position, he will be held liable to the responsibilities thereof in favor of creditors whose rights have intervened during the time his name thus appears as a stockholder. Chubb v. Upton, 95 U. S. 665 [24 L. Ed. 523]; Keyser v. Hitz, 133 U. S. 138, 10 S. Ct. 290 [33 L. Ed. 531]; Veeder v. Mudgett, 95 N. Y. 295; Stutz v. Handley [C. C.] 41 F. 531; Pauly v. Trust Co., 165 U. S. 606, 17 S. Ct. 465 [41 L. Ed. 844]. Suits of this character, strictly speaking, are not actions based upon the contract of subscription existing between the corporation and the stockholder. The right of the creditors to enforce the statutory liability against shareholders in a national bank is not dependent upon the terms of the stock-subscription contract. ° * *

"The liability sought to be enforced in this case is not one created by a contract existing between the corporation and the stockholders, but is one created by statute in favor of creditors, and not in favor of the corporation. It is a liability which cannot be affected, discharged, or released by any ac-

tion taken by the corporation, or by the combined action or agreement of the corporation and its stockholders."

And on page 855 of 89 F. it was said:

"As already said, this suit is not based upon the contract of subscription between the bank and the plaintiff in error, and is not, therefore, an action wherein the issue can be made as to the voidability of that contract as between the bank and the shareholders. The suit is on behalf of the creditors, to enforce a statutory liability in which the bank has no interest; a liability which was not created by any contract to which the bank was a party; a liability which it is beyond the power of the bank to modify, release, or discharge; and a liability which, if once called into existence by the act of one assuming the position of a stockholder, cannot be defeated save by the creditors, or by some one acting in their behalf. Potts v. Wallace, 146 U. S. 689–703, 13 S. Ct. 196 [36 L. Ed. 1135]. The law presumes that the creditors of a corporation become, and continue to remain, such, in reliance upon the liability imposed upon the stockholders by statute; and it would be a fraud upon the creditors to permit one who has for years occupied the position of a stockholder, and has received the benefits thereof, to repudiate liability to the creditors on the ground that, as between himself and the corporation, his contract of subscription to the capital stock was one voidable at his option."

See, also, Benedict v. Anderson, Receiver (C. C. A.) 70 F. (2d) 227.

■ The court therefore finds no merit in the contention that defendant by elimination as director on January 11, 1933, and the return of his depository receipt and director's agreement, and by his request of the executive vice president of the bank for return of his Guardian Group stock certificate, avoided his statutory liability upon the theory that he had done every act possible for him to do to effect a lawful transfer of the 10 shares of stock. The by-laws of the Guardian Bank provided:

"Certificates for stock of this association shall be transferable only upon the books of the association and no new certificate shall be issued except upon the surrender and cancellation of the certificate previously issued for the same stock."

It appears that the certificate for 10 shares in the Guardian Bank was delivered to the Trust Company and that the certificate for 50 shares in the Guardian Group was also deposited with that company. It does not appear that the defendant made any request bearing upon the transfer of the 10 shares of stock nor did he or any one for him make or attempt to make any surrender of that stock. It is uncontroverted that defendant's certificate was never at any time presented to the bank with request for transfer, either by Plym or by any one for him. In these circumstances, it must be conclusively presumed upon the principle of estoppel that he was the owner of the shares at the time of the failure of the bank to meet its obligations. Creditors of banks and their representatives are not to be burdened with the duty of unraveling the tangled skein resulting from efforts to evade the clear purpose of statutes imposing a double liability upon stockholders in event of failure. In Heiden v. Cremin (C. C. A.) 66 F. (2d) 943, 947, it was said:

"The proposition is that defendant appeared on the bank books as a stockholder; that the addition of the word 'trustee' on those books does not prevent estoppel of him claiming his holding was as a trustee. Undoubtedly, any one who permits his name to appear as a stockholder—that is, as owner of the stock—is liable through estoppel. Lantry v. Wallace, 182 U. S. 536, 21 S. Ct. 878, 45 L. Ed. 1218; Scott v. Deweese, 181 U. S. 202, 21 S. Ct. 585, 45 L. Ed. 822; Aspinwall v. Butler, 133 U. S. 595, 10 S. Ct. 417, 33 L. Ed. 779; Delano v. Butler, 118 U. S. 634, 7 S. Ct. 39, 30 L. Ed. 260. The entire basis of this 'book' liability, is estoppel based on the showing on the books of ownership which, by the statute, are made available to inspection of creditors and, presumably, are a basis for their dealings with the bank. If a person appears on the stock books by name without qualification, he appears as owner and, as such, is subject to estoppel."

Defendant urges that this case should be governed by Whitney v. Butler, 118 U. S. 655, 7 S. Ct. 61, 30 L. Ed. 266. In that case, however, it appeared that the stockholder actually delivered his certificate and a power of attorney to the president and received from the bank the money therefor. The bank then omitted to make formal transfer of the stock upon the transfer book. As indicated, no such state of facts is found in the present case.

Defendant also urges that because of his liability for assessment upon the 50 shares of stock owned by him in the Guardian Group, he will, if subjected to liability upon the 10 shares of stock, be subjected to duplicate liability. The court must assume that the sug-

gested result will not occur. Plaintiff disclaims any such intention. Until recognition and payment of any liability which may exist upon the holdings of stock in the Guardian Group, defendant is not in position to urge this possible liability as a defense against the liability here found.

It follows that judgment should be entered in favor of plaintiff and against defendant in the sum of $1,000 with interest at 5 per cent. from August 1, 1933.